**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| _____ ) | |
| CITY OF FALLS CHURCH,          ) | |
| VIRGINIA,                  ) | |
|           Plaintiff,    ) | |
| V.                       ) | Civil Action No. 1:07cv174 |
|                        ) | |
| FAIRFAX COUNTY WATER      ) | |
| AUTHORITY,               ) | |
|           Defendant.    ) | |
| _____ ) | |

## MEMORANDUM OPINION

The City of Falls Church, Virginia (the "City"), files this action for declarative and injunctive relief.  The City contends that the federal government has granted it an exclusive franchise to provide water service to customers residing in the City and in certain adjacent portions of Fairfax County. The City asserts that this exclusive federal service area "preempts" any Virginia law that would otherwise allow the Fairfax County Water Authority to sell water to customers in those portions of Fairfax County where the City is currently capable of providing water service.

The City of Falls Church is a political subdivision of the Commonwealth of Virginia located adjacent to Fairfax County.  The City's Charter authorizes it to maintain and operate a "water works" system both "within and without the City." Charter, City of Falls Church, § 2.03(n)(1988).

The Fairfax County Water Authority ("Fairfax Water") is a
body politic and corporate, created in 1957 by the Board of
Supervisors of Fairfax County pursuant to the Virginia Water
and Waste Authorities Act, Va. Code Ann. §§ 15.2-5100 to
15.2-5158 (Michie 2003 & Supp. 2006). Under the Authorities Act,
a water authority has the power to construct and operate a
water system "within, outside, or partly within and partly
outside one or more of the localities which created the authority
. . . ." Id. § 15.2-5114(6).

The City contends that four Acts of Congress -- in 1859,
1926, 1947 and 1996 -- effectively granted it an exclusive water
distribution franchise in the City and certain adjoining portions
of Fairfax County.

In 1859, Congress enacted legislation to provide public
drinking water for the District of Columbia from the Potomac
River at Great Falls. Act of March 3, 1859, ch. 84, 11 Stat. 435
(1859) (the " 1859 Act"). The 1859 Act directed the Corps of
Engineers (then under the supervision of the Department of
Interior), to exercise supervisory authority over this "Potomac
Waterworks," which later came to be known as the Washington
Aqueduct (the "Aqueduct"). In 1867, Congress transferred control
over the Aqueduct to the Secretary of War. See Act of March 2,
1867, ch. 167, § 2, 14 Stat. 466 (1867).

In 1926, Congress authorized the Secretary of War, in his discretion and subject to the approval of the Chief of Engineers, to supply water from the Aqueduct to Arlington County, Virginia, should Arlington so request.  Act of April 14, 1926, ch. 140, 44 Stat. 251 (1926) (the "1926 Act").  Arlington County was required to pay for the water that it used and to pay the expenses of connecting its water distribution system with the Aqueduct's facilities. Id. The 1926 Act provided that the Secretary of War may revoke at any time any permit for the use of said water that may have been granted.

In 1947, Congress authorized water from the Aqueduct to the then-town of Falls Church, as well as to other areas in the Washington, D.C. suburbs of Northern Virginia.  The 1947 Act authorized the Secretary of War, on the recommendation of the Chief of Engineers and the Board of Commissioners of the District of Columbia,

> in his discretion, upon request of the town council of the town of Falls Church . . . or any other competent State or local authority in the Washington metropolitan area in Virginia, to permit the delivery of water. . . to the Falls Church water system for the purpose of supplying water for the use of said town and such adjacent areas as are now or shall hereafter be served by the water system of said town; or to any other competent State or local authority in said metropolitan area in Virginia.

Act of June 26, 1947, ch. 149, § 1, Pub. L. No. 80- 118, 61 Stat. 181 (1947) (the "1947 Act").  The Secretary of War was given the

power to revoke "at any time any permit for the use of said water
that may have been granted."

In 1957, Fairfax County created the Fairfax County Water
Authority, now doing business as "Fairfax Water."  The City
contends that, at the time Fairfax Water was established, "the
City's service territory included all of the area within the
City's corporate boundaries, as well as territory within the
County of Fairfax.

On May 21, 1959, the City entered into a 30-year agreement
with Fairfax Water. No federal entity was a party. In that
agreement, the City and Fairfax Water mutually agreed to sell
surplus water to one another on the terms set forth in the
agreement.  The agreement also delineated specific service areas
that were shown on an attached map. Fairfax Water agreed not to
serve or distribute water within the delineated service area of
the City, and the City likewise agreed not to serve or distribute
water outside of that service area.  The agreement was to remain
in force and effect for a period of thirty (30) years from the
date of execution.  The Agreement expired in 1989.

In 1996, Congress authorized the Secretary of the Army,
within three years, to transfer the Aqueduct from the Army Corps
of Engineers "to a non-Federal, public or private entity."
Act of Aug. 6, 1996, § 306(b), (d), Pub. L. No. 104-182, 110
Stat. 1686 (1996). No transfer occurred, however, and the

-4-

Aqueduct has continued to operate its water system for its three wholesale customers, the District of Columbia Water and Sewer Authority ("DCWASA"), Arlington County, and the City of Falls Church. The Aqueduct remains the property of the United States under the control and superintendence of the Chief of Engineers. See 40 U.S.C. §§ 9501-02 (providing the duties and powers of the Chief of Engineers regarding the Aqueduct). Section 306 of the 1996 Act was repealed by Congress in 2002. Act of Aug. 21, 2002, Pub. L. No. 107-217, §6, 116 Stat. 1325 (2002)(repealing Pub. L. No. 104-182, § 306).

In 1998, the District of Columbia, Arlington County and DCWASA entered into a Memorandum of Understanding to form a "Wholesale Customers Board" for the purpose of "jointly relat[ing] to the Army" about the cost, quality and availability of water furnished to them by the Aqueduct and about the operation of the Aqueduct. The memorandum provides that each Wholesale Water Customer has entered into an agreement to pay its proportional share of the Army's costs of operating and maintaining the Aqueduct.

In July 2005, Fairfax Water advised the City that it intended to serve new developments in Fairfax County, within Tysons Corner, Merrifield, and the area surrounding the Vienna Metro Station.  These locations are located at interface areas served by Fairfax Water and the City of Falls Church. The

City contends that these interface areas in Fairfax County are within its own exclusive service territory.

The City complains that, in January 2007, Fairfax Water approached a developer, Trammell-Crow, offering to sell water for a "proposed office complex" in Merrifield, located in Fairfax County, and within the City's service territory.

The City claims that, unless Fairfax Water is enjoined, it will continue to solicit new customers within the City's alleged service area. That any reduction in its geographical service territory or existing or potential customer base would disturb the statutory arrangements made by Congress for the care, management, and superintendence of the Washington Aqueduct by the Chief of Engineers of the United States Army Corps of Engineers. The City states that Fairfax Water's actions could disturb and interfere with the federal program and activity authorized by the Acts of 1859, 1926, 1947 and 1996, and that Fairfax Water's efforts to serve new or existing customers within the City's service territory are therefore pre-empted by the Supremacy Clause of the Constitution of the United States. The City requests that the Court declare that the City has an exclusive water service area in Fairfax County, and  enjoin Fairfax Water from providing or offering to provide any water service within that area.

The Supremacy Clause of the Constitution provides that

federal law "shall be the supreme law of the land . . . ." U.S. Const. Art. VI, cl. 2. Congress can preempt and displace State law under the Supremacy Clause "in three circumstances." English v. General Elec. Co., 496 U.S. 72,78 (1990). First, Congress can explicitly state that its enactments preempt state law. Id. Second, it can determine to occupy the entire field of regulation to the exclusion of any state law. Id. at 79. Third, "state law is pre-empted to the extent that it actually conflicts with federal law." Id. "[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88,96 (1992) (plurality) (citation omitted).

Under Virginia law, the provision of drinking water to the citizens of the Commonwealth is considered an "essential governmental function[] to provide for the public health and welfare." Va. Code Ann. § 15.2-5114 (Michie 2003).

The Supreme Court has admonished lower courts to apply a strong presumption against preemption, particularly in areas traditionally regulated by the States.  In areas of traditional state regulation, there is a presumption that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest. Bates v. Dow Agrosciences L.L.C., 544 U.S. 431, 449(2005).  The strong presumption against

preemption has been followed by the Fourth Circuit. <u>E.g.</u>, <u>Pinney v. Nokia, Inc.</u>, 402 F.3d 430,453,457 (4th Cir.), <u>cert.</u> <u>denied</u>, 126 S.Ct. 551 (2005); <u>College Loan Corp. v. SLM Corp.</u>, 396 F.3d 588, 597 (4th Cir. 2005); <u>Southern Blasting Servs., Inc. v. Wilkes County</u>, 288 F.3d 584,590-91 (4th Cir. 2002). The presumption against preemption applies both to the question of whether Congress intended to displace state law in the first instance, as well as to the scope of any such preemption that might be found. <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470,485 (1996).

Virginia law permits Fairfax Water to provide service to customers anywhere in Fairfax County. Va. Code Ann. § 15.2-5114(6) (Michie 2003) (allowing for service "within, outside, or partly within and partly outside one or more of the localities which created the authority"). Fairfax Water could *not* provide water service within the limits of the City of Falls Church, however, without the permission of the City Council. <u>See</u> Va. Const. Art. VII, § 8 (1971)(requiring consent of city council for any water utility to use city's streets, alleys or public grounds); Va. Code Ann. § 15.2-5137(A) (Michie 2003) (providing that mandatory connection by a landowner to water authority's system requires the "concurrence of the locality in which the land is located"). Within the limits of Fairfax County, by contrast, Fairfax Water is free to provide water service anywhere it can. This includes areas that, like Tysons Corner,

-8-

Merrifield, and the area surrounding Vienna Metro Station, are located at "interface areas" where either Fairfax Water or the City is capable of providing water service.

The City seeks to exclude Fairfax Water from serving "interface areas" in its home County, the City claims that Congress' Acts of 1859, 1926, 1947, and 1996 conferred upon the City an exclusive federal service territory in those areas. The City concludes that Fairfax Water's efforts "to serve new or existing customers within the City's service territory are . . . pre-empted by the Supremacy Clause. . . ."  None of those Acts meets the City's burden of showing Congress' "clear and manifest" intention to establish an exclusive federal service enclave.

The 1859 and 1926 Acts do not mention Falls Church and do not establish an exclusive service territory in Fairfax County. Neither Act supports the City's position.  The 1859 Act established the Aqueduct. The 1926 Act authorized the Aqueduct, in the discretion of the Secretary of War, to sell water to Arlington County should it so request.

The 1947 Act permitted the Secretary of War, in his discretion, to provide water from the Aqueduct to the town of Falls Church as well as to any other competent State or local authority in the Washington metropolitan area in Virginia.  61 Stat. 181.  This Act simply made drinking water available to residents in Northern Virginia, provided that all expense of

doing so was borne by said town of Falls Church, or such other communities requesting such services.  Nothing in this Act suggests that Congress granted the City, or any other wholesale customer, an exclusive water franchise that would trump Virginia state law.

The 1996 Act authorized the Secretary of the Army to sell the Aqueduct within three years to a non-Federal, public or private entity.  110 Stat. 1686.  The fact that Congress desired to see the federal government *exit* the water supply business altogether cannot be read as an intention to create an exclusive *federal* service area in Fairfax County in which the City of Falls Church was granted the lone franchise. In any event, Section 306 of the 1996 Act was repealed by Congress in 2002. <u>See</u> Act of Aug. 21, 2002, <u>supra</u>, 116 Stat. 1325.

There is simply no basis to conclude that Congress expressly preempted the ability of one local political subdivision in Virginia, like Fairfax Water, to supply drinking water to residents in Fairfax County, or that Congress intended to occupy the field of local water supply. The first two types of federal preemption are, therefore, unavailable to the City.

The City also cannot establish the third type of federal preemption -- conflict preemption.  Conflict preemption applies "where it is impossible for a private party to comply with both state and federal requirements, <u>see</u>, <u>e.g.</u>, <u>Florida Lime & Avocado</u>

Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963), or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."' English, 496 U.S. at 79 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).

The City pleads that Section 306 of the 1996 Act authorized the Aqueduct to borrow money from the United States for certain capital improvements and required the Aqueduct, as a condition to obtaining such loan, to enter into contracts with its wholesale customers, including the City, that required them to commit to repay a pro-rata share of the principal and interest. The City contends that competition in its service area might undercut its ability to repay its obligations to the Aqueduct in accordance with the 1996 Act.

The City does not plead that the Secretary of the Army borrowed money from the United States or that the Aqueduct entered into a contract with the City under the terms specified in Section 306(e) of the 1996 Act.

Also, after the Army failed to sell the Aqueduct within the three-year window allowed by Section 306 of the 1996 Act, Congress repealed Section 306.  Act of Aug. 21, 2002, supra, 116 Stat. 1325.  The 1996 Act, therefore, cannot support the City's preemption claim.

Even assuming for the sake of argument that the City had entered into a contract with the Aqueduct requiring it to fund its pro-rata share of the Aqueduct's operations, the City's charter grants it the power to set rates and charges for water services as the City sees fit. <u>See</u> Charter, City of Falls Church, § 13.04 (2003). The City also has the power to levy taxes in order to raise whatever moneys it deems "necessary to pay the debts and defray the expenses of the city. . . ." <u>Id.</u>, § 2.02. The City has the means to pay for the water it purchases, and the City does not allege any contrary facts in the Complaint. Indeed, if the City purchases less water to supply its "service area," it reduces accordingly its "pro rata" share of the Aqueduct's operations.

Finally, even assuming that the Aqueduct secured a loan and entered into a repayment contract with the City, that fact alone would fail to show that Congress intended to grant the City an exclusive service area in Fairfax County. "[O]bstacle preemption, like other forms of preemption, is 'fundamentally a question of congressional intent.'" <u>Mgmt. Ass'n for Private Photogrammetric Surveyors v. United States</u>, 2006 U.S. Dist. LEXIS 90635 * 18 (E.D. Va. Dec. 13,2006) (quoting <u>English</u>, 496 U.S. at 78-79); <u>see also Gade</u>, 505 U.S. at 104 n.2 (noting that conflict preemption applied because Congress intended that inconsistent state standards would be displaced by federal scheme). Here, the

City cannot point to any facts to show that Congress wanted to displace Virginia law by granting the City an exclusive federal franchise to sell water in Fairfax County.

When Congress has intended to grant an exclusive water franchise, it has done so in the unmistakable terms that preemption analysis requires. In the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921-1936(a), Congress authorized the Farmers Home Administration to make loans to certain non-profit associations to provide water service in rural areas. Congress specifically provided that neighboring municipalities were barred from selling water in the loan recipient's service area or granting a competing franchise during the term of any such federal loan. See 7 U.S.C. §1926(b) ("The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation . . . or by the granting of any private franchise for similar service within such area during the term of such loan.").  As the Fourth Circuit has recognized, section 1926(b) was intended "to protect federally indebted, nonprofit water associations from 'competitive facilities, which might otherwise [be] developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system.'" Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert County,

401 F.3d 274, 278 (4th Cir. 2005) (citation omitted).

Had Congress intended to grant the City of Falls Church an exclusive federal service territory in Fairfax County, it certainly knew how to say so.  But there is nothing in any of the federal Acts upon which the City relies in support of its claim.

The City bears a heavy burden to show that Congress' intent was "clear and manifest," Bates, 544 U.S. at 449, to strip Fairfax Water of its state-conferred right to distribute water throughout Fairfax County.  Suggestions of a conflict are insufficient to overcome this burden. Hillsborough County v. Automated Medical Labs., Inc., 471 U.S. 707,720 (1985).  The City must present a showing of implicit pre-emption of the whole field, or of a conflict between a particular local provision and the federal scheme, that is strong enough to overcome the presumption that state and local regulation of health and safety matters can constitutionally coexist with federal regulation.

In this case, the only federal purpose shown by the Acts cited by the City is to enable the Aqueduct to provide water to residents of the Washington, D.C. metropolitan area at the request of local municipalities. Nothing in any of these Acts entitles the City (or any other purchaser of Aqueduct water) to an exclusive service territory.  The 1947 Act, in particular, simply authorizes the federal government to sell water upon request anywhere in the D.C. metropolitan area in Virginia.

Fairfax Water's attempt to supply "interface areas" that could also be served by the City in no way conflicts with that federal purpose. The City cannot overcome the presumption that Congress does not intend to supplant state law.  <u>De Buono v. Nysa-Ila Med. & Clinical Servs. Fund,</u> 520 U.S. at 806, 814 (1997), and for these reasons this case should be dismissed.


                                        /S/

                          _____
                          CLAUDE M. HILTON
                          UNITED STATES DISTRICT JUDGE


Alexandria, Virginia
May 15  , 2007